LEXSEE 2002 U.S. DIST. LEXIS 2140

**Scott Smith and Jennifer L. Brodt, on behalf of themselves and all persons similarly situated, Plaintiffs, v. United HealthCare Servs., Inc., and United HealthCare Insurance Company, Defendants.**

**Civil No. 00-1163 ADM/AJB**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**

*2002 U.S. Dist. LEXIS 2140*

**February 5, 2002, Decided**

**SUBSEQUENT HISTORY:** Summary judgment granted by, Motion to strike denied by, Judgment entered by *Smith v. United Healthcare Servs., 2003 U.S. Dist. LEXIS 15102 (D. Minn., Aug. 28, 2003)*

**DISPOSITION:** [*1] Plaintiff's Motion to Certify a Class GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, subscribers to a health maintenance plan filed a class-action lawsuit against defendants, administrators of the plan, alleging that they overcharged plaintiffs and others similarly situated for prescription drug co-payments in breach of their federally regulated health plans. Plaintiffs filed a motion to certify a class.

**OVERVIEW:** The subscribers argued that the administrators failed to follow the "lesser of" plan language. They alleged that, in circumstances where the "Prescription Drug Cost" or "actual cost" was less than the co-payment, subscribers were required to pay the higher co-payment, resulting in an overcharge. The subscribers contended that over 1,000,000 subscribers were affected by this billing practice. The court found that such a large number of potential members of the proposed class satisfied the numerosity requirement. The court also found that the interpretation of the plan language applied equally to similarly situated plan members, so there was sufficient evidence of common questions of law and fact. Furthermore, the typicality prerequisite was satisfied. The court noted that the credentials of the subscribers' counsel indicated that they were fully competent and willing to pursue the action. The subscribers' claims and interests were similar to members of the proposed class and there was no indication of conflicting goals. Thus, they were adequate class representatives. Lastly, the court found that class certification under *Fed. R. Civ. P. 23(b)(2)* and *23(b)(3)* was appropriate.

**OUTCOME:** Subscribers' motion to certify a class was granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Class Actions > Certification*
[HN1] Class certification is governed by *Fed. R. Civ. P. 23*.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN2] Plaintiffs bear the burden of satisfying the class certification requirements.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Judicial Discretion*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN3] A court may certify the class only when it is satisfied after rigorous analysis that all of *Fed. R. Civ. P. 23*'s prerequisites are met. For purposes of the *Rule 23* analysis, the substantive allegations in plaintiffs'

Case 4:08-cv-00101-GKF-PJC   Document 21-8   Filed in USDC ND/OK on 06/04/2008   Page 2 of 8

Page 2
2002 U.S. Dist. LEXIS 2140, *1

complaint must be accepted as true. Courts should not conduct a preliminary inquiry into the merits of a suit in determining whether it may be maintained as a class action. The district courts ultimately retain wide discretion in determining whether or not to certify a class under *Rule 23*.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Class Members > General Overview*
*Civil Procedure > Class Actions > Prerequisites > Numerosity*
[HN4] *Fed. R. Civ. P. 23(a)* sets forth four preliminary requirements for class certification. A member of the potential class must establish that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Civil Procedure > Class Actions > Class Members > General Overview*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN5] All questions of law need not be common to every member of the class. *Fed. R. Civ. P. 23(a)(2)* may be satisfied where the course of conduct leading to a cause of action affects all class members and at least one of the elements for that cause of action is shared by the class members.

*Civil Procedure > Class Actions > Class Members > General Overview*
*Civil Procedure > Class Actions > Prerequisites > Commonality*
[HN6] Commonality exists if the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.

*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN7] The typicality prerequisite for class certification is satisfied when the claims of the named plaintiffs arise from the same event or are based on the same legal theory as the claims of the class members. The typicality requirement is not an onerous one. Typicality exists if there are other members of the class who have the same or similar grievances as the plaintiff. A strong similarity of legal theories satisfies the typicality requirement even if substantial factual differences exist.

*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN8] To satisfy the requirement that the named representatives will fairly and adequately protect the interests of the class, plaintiffs must demonstrate that (1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously, and (2) each representative's interests are sufficiently similar to those of the class such that it is unlikely that their goals and viewpoints will diverge.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
*Civil Procedure > Remedies > Damages > Monetary Damages*
[HN9] In addition to meeting the threshold criteria of *Fed. R. Civ. P. 23(a)*, a party seeking class certification must satisfy one of the requirements of *Fed. R. Civ. P. 23(b)*. A class may be certified under *Fed. R. Civ. P. 23(b)(2)* if the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. *Fed. R. Civ. P. 23(b)(2)*. Injunctive or declaratory relief is not appropriate when the final relief relates exclusively or predominantly to money damages. *Fed. R. Civ. P. 23(b)(2)* advisory committee's note.

*Civil Procedure > Class Actions > Certification*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Class Actions*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Equitable Relief > Injunctive Relief*
[HN10] If the *Fed. R. Civ. P. 23(a)* prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under *Fed. R. Civ. P. 23(b)(2)*. A request for monetary relief is an insufficient basis for refusing to

Case 4:08-cv-00101-GKF-PJC   Document 21-8   Filed in USDC ND/OK on 06/04/2008   Page 3 of 8

Page 3
2002 U.S. Dist. LEXIS 2140, *1

certify a class action under *Rule 23(b)(2)*. Other courts have certified Employee Retirement Income Security Act of 1974, 29 U.S.C.S. §§ 1011-1461, classes pursuant to *Rule 23(b)(2)* where the plaintiffs alleged a course of conduct generally applicable to the class and sought monetary relief secondary to their request for declaratory and injunctive relief.

*Civil Procedure > Class Actions > Class Members > General Overview*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN11] *Fed. R. Civ. P. 23(b)(3)* requires (1) that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Fed. R. Civ. P. 23(b)(3)*. In evaluating predominance and superiority, several factors are considered, including: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Class Members > General Overview*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN12] When there is a common basis upon which to establish the fact of injury to each member, the existence of individualized questions of damage amounts does not preclude certification.

**COUNSEL:** Wood R. Foster, Jr., Esq., and Jordan M. Lewis, Esq., Siegel, Brill, Greupner, Duffy & Foster, P.A., Minneapolis, Minnesota, for Plaintiffs.

Plaintiffs, Pro se.

Peter Wasylyk, Esq., Law Offices of Peter N. Wasylyk, Providence, Rhode Island, for Plaintiffs.

Plaintiffs, Pro se.

David T. Schultz, Esq., and Jacqueline M. Moen, Esq., Halleland Lewis Nilan Sipkins & Johnson, P.A., Minneapolis, Minnesota, for Defendants.

Defendants, Pro se.

**JUDGES:** ANN D. MONTGOMERY, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** ANN D. MONTGOMERY

**OPINION**

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiffs Scott Smith and Jennifer Brodt (collectively, "Plaintiffs") filed a class-action lawsuit against Defendants United HealthCare Services, Inc., and United HealthCare Insurance Company (collectively, "UHC"), alleging that UHC overcharged them and others similarly situated for prescription drug co-payments in breach of their federally regulated health plans. On November 29, 2001, the undersigned United States District Judge heard Plaintiffs' Motion to Certify a Class [Doc. No. 21]. For reasons set forth below, the Motion is [*2] granted.

**II. BACKGROUND**

The health care plans to which Plaintiffs subscribed are subject to the regulations set forth in the Employee Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. §§ 1001-1461*. Plaintiff Scott Smith ("Smith"), a resident of Massachusetts, subscribed to a health maintenance plan underwritten and/or administered by United HealthCare Insurance Company while he was employed by Globe Manufacturing Company. Plaintiff Jennifer L. Brodt ("Brodt"), a Rhode Island resident, subscribed to a health maintenance organization plan controlled by United HealthCare Services, Inc., during times relevant to this matter.

United HealthCare Services, Inc., is a Minnesota corporation with headquarters in Hopkins, Minnesota. The company owns and controls health maintenance organizations ("HMOs") in several states, including Rhode Island, and assigns employees to work for the HMOs. United HealthCare Insurance Company is an

Case 4:08-cv-00101-GKF-PJC   Document 21-8   Filed in USDC ND/OK on 06/04/2008   Page 4 of 8

Page 4
2002 U.S. Dist. LEXIS 2140, *2

insurance company with headquarters in Hartford, Connecticut. The company, which is a life and health insurance carrier, is owned entirely by United Health Group, a Minnesota corporation located in Hopkins, Minnesota.

Plaintiffs [*3] pursue enforcement of their health plan terms under *29 U.S.C. § 1132(a)(1)(B)*. Plaintiffs seek to "clarify and enforce [their] rights under the terms of their plans and to recover restitution for excess payments made." Compl. P 41. Under the plans, subscribers were entitled to pay the "lesser of" the fixed dollar co-pay or the "Prescription Drug Cost." [1] Pl. Mem. in Supp., at 3-4. For example, if a subscriber purchases a prescription drug with an applicable $ 5 co-payment and the "Prescription Drug Cost" is $ 8, then under the plan the subscriber should pay $ 5. Conversely, if the "Prescription Drug Cost" is $ 3, then the subscriber should pay $ 3 rather than the $ 5 co-payment.

> 1   Some plans used the term "Prescription Drug Cost," others used the term "actual cost," and still others used the word "cost." *See* Watson Aff., PP 3-4. Whether or not these three variations have different legal effects is an issue to be resolved at a later juncture.

Plaintiffs aver that UHC failed [*4] to follow the "lesser of" plan language. Plaintiffs allege that, in circumstances where the "Prescription Drug Cost" or "actual cost" was less than the co-payment, subscribers were required to pay the higher co-payment, resulting in an overcharge of co-payments to the subscribers. Thus, contrary to the plan language, UHC failed to charge subscribers the "lesser of" the fixed dollar co-payment or "Prescription Drug Cost."

"Edit 61" is a computer function at the core of the co-payment charges in this case. UHC's electronic claims system, operated by Diversified Pharmaceutical Services, determines the exact co-pay amount to be communicated through a computer network to the participating pharmacy and collected from the UHC subscriber at the point of sale. Simply put, Edit 61 calculates the co-payment amount to be paid. When Edit 61 is "on," the computer system communicates the lesser of the fixed dollar co-pay or the pharmacy's "usual and customary," i.e., retail, amount. *See* Bergen Dep., at 85-88. When Edit 61 is "off," the computer communicates the lesser of the fixed dollar co-pay or the prescription drug "cost." *Id.*; Pl. Mem. in Supp., at 6. Before September 15, 1998, Edit [*5] 61 was turned "on" for Brodt's plan. During this time, Brodt alleges she was overcharged when she paid the fixed $ 5 co-payment for filling a prescription for Amytriptyline, the "Prescription Drug Cost" of which is $ 2.32. [2] *See* Pl. Mem. in Supp., at 7-8. After Edit 61 was turned "off," Brodt paid a co-payment of $ 3.34, which is the "Prescription Drug Cost," when she filled a prescription for Deltasone. [3] *Id.* Brodt contends that when Edit 61 was "on," she was not charged the lesser of the fixed dollar co-pay or the "Prescription Drug Cost" as provided in her plan. Brodt requests declaratory and injunctive relief and seeks to recover the difference between the "Prescription Drug Cost" of $ 2.32 and the fixed $ 5 co-payment she paid. [4]

> 2   The actual ingredient cost of Amytriptyline is $ 0.32, when added to the pharmacy's $ 2.00 dispensing fee, reaches this total. *See* Pl. Mem. in Supp., at 7.
> 3   The actual ingredient cost of Deltasone is $ 1.09, when added to the pharmacy's $ 2.25 dispensing fee, reaches this total. *See* Pl. Mem. in Supp., at 7.
> 4   Brodt's co-payment for Amytriptyline is one example from computer records containing multiple instances of such prescription drug purchases. *See* Foster Aff., Tab 7.

[*6] Plaintiff Smith had a family plan, issued on January 1, 1999, which provided that "if the Prescription Drug Cost is less than the Co-payment, the Co-payment does not apply and the Covered Person pays the Prescription Drug Cost." *Id.* at 8. Edit 61 remained "on" [5] for the Smith family's plan during 1999. Smith paid the fixed $ 5 co-payment when his wife, Shirley, filled a prescription for Promethazine, which has a "Prescription Drug Cost" of $ 3.20. *Id.* at 9. Accordingly, Smith was not charged the lesser of the fixed dollar co-pay or the "Prescription Drug Cost." Smith requests declaratory and injunctive relief, seeking to recover the difference between the "Prescription Drug Cost" of $ 3.20 and the fixed $ 5 co-payment. [6]

> 5   On September 15, 1998, Edit 61 was turned "off" for a large number of plans, including Brodt's. However, Edit 61 remained "on" for some plans, such as the Smith plan. Furthermore, Edit 61 was turned back "on" for Brodt's plan in January, 1999, as indicated by her claim co-pay data. *See* Foster Aff., Tab 7. The circumstances of

UHC's decisions and actions with regard to Edit 61 remain subject to dispute and future discovery.

[*7]

6   Smith's co-payment for Promethazine is one example from computer records containing multiple instances of such prescription drug purchases. *See* Foster Aff., Tab 11.

Plaintiffs contend they did not receive the benefit of the "lesser of" language in their plans. Plaintiffs allege there is a class of similarly situated individuals and seek certification of the class.

**III. DISCUSSION** [HN1] Class certification is governed by *Rule 23 of the Federal Rules of Civil Procedure*. Pursuant to *Rule 23*, Plaintiffs seek to certify and represent a class consisting of:

> All Members (subscribers, participants and beneficiaries) of ERISA-covered health plans controlled, underwritten or administered by [United HealthCare Insurance Company] or [United HealthCare Services, Inc.,] or their subsidiaries, where the applicable plan language provided that the Member should pay the lesser of the "Prescription Drug Cost" (sometimes called the "cost" or "actual cost"), or the fixed dollar co-pay when purchasing prescription drugs at point of sale, but who in fact were charged an amount greater than the [*8] "Prescription Drug Cost" or the "actual cost" when the "Prescription Drug Cost" (or "actual cost") was less than the fixed dollar co-pay.

Pl. Mem. in Supp., at 11. [HN2] Plaintiffs bear the burden of satisfying the class certification requirements. *General Telephone Co. v. Falcon, 457 U.S. 147, 161, 72 L. Ed. 2d 740, 102 S. Ct. 2364 (1982)*.

[HN3] The Court may certify the class only when it is satisfied "after rigorous analysis" that all of *Rule 23*'s prerequisites are met. *Jenson v. Eveleth Taconite Co., 139 F.R.D. 657, 659 (D. Minn. 1991)*. For purposes of the *Rule 23* analysis, the substantive allegations in Plaintiffs' complaint must be accepted as true. *See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974)* (stating that courts should not "conduct a preliminary inquiry into the merits of a suit in determining whether it may be maintained as a class action"); *Lockwood Motors, Inc. v. General Motors Corp., 162 F.R.D. 569, 573 (D. Minn. 1995)*. The district courts ultimately retain wide discretion in determining whether or not to certify a class under *Rule 23*. *Coleman v. Watt, 40 F.3d 255, 259 (8th Cir. 1994)*; [*9] *Coley v Clinton, 635 F.2d 1364, 1378 (8th Cir. 1980)*.

**A. *Rule 23(a)***

[HN4] *Rule 23(a)* sets forth four preliminary requirements for class certification. A member of the potential class must establish that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

*Fed. R. Civ. P. 23(a)*. These prerequisites will be examined in turn.

First, the number of potential members of the class must be so numerous that joinder of all members is impracticable. *Fed. R. Civ. P. 23(a)(1)*. Plaintiffs contend that over one million subscribers were affected by "Edit 61." *See* Pl. Mem. in Supp., at 13-14. Such a large number of potential members of the proposed class satisfies the numerosity requirement.

Second, *Rule 23(a)* requires Plaintiffs to show "there are questions of law or fact common to the class." *Fed. R. Civ. P. 23(a)(2)*. [HN5] All such questions need not be common to every [*10] member of the class. *See Paxton v. Union National Bank, 688 F.2d 552, 561 (8th Cir. 1982)*; *Lockwood, 162 F.R.D. at 575*. *Rule 23(a)(2)* may be satisfied where the course of conduct leading to a cause of action affects all class members and at least one of the elements for that cause of action is shared by the class members. *See Forbush v. J.C. Penney Co., Inc., 994 F.2d 1101, 1106 (5th Cir. 1993)* (finding

commonality despite the fact that four different pension plans were involved); *Lockwood*, 162 F.R.D. at 575 (citing Newberg, *Class Actions* § 3.10 at 3-50). In this case, the interpretation of the plan language applies equally to similarly situated plan members. [HN6] Commonality exists if "the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Paxton*, 688 F.2d at 561 (citation omitted); *see also Coley*, 635 F.2d at 1378. The record here indicates that the variations in the plans' terms "Prescription Drug Cost" and "actual cost" and "cost" may have the same effective meaning. How [*11] these terms will be defined will involve issues of legal construction common to all potential class members. Plaintiffs have presented sufficient evidence of common questions of law and fact.

Third, *Rule 23(a)* requires Plaintiffs to establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Fed. R. Civ. P. 23(a)(3)*. [HN7] The typicality prerequisite is satisfied when the claims of the named plaintiffs arise from the same event or are based on the same legal theory as the claims of the class members. *Lockwood*, 162 F.R.D. at 575. The typicality requirement is not an onerous one. *See Paxton*, 688 F.2d at 562. Typicality exists if there are "other members of the class who have the same or similar grievances as the plaintiff." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (citation omitted). A "strong similarity of legal theories" satisfies the typicality requirement even if substantial factual differences exist. *Lockwood*, 162 F.R.D. at 575.

Plaintiffs are members of the potential class. Both were covered by plan language providing that when [*12] they purchased prescription drugs from participating pharmacies, they would be required to pay the "lesser of" the fixed dollar co-pay or the Prescription Drug Cost. In multiple instances, each was charged the fixed dollar co-pay in circumstances where the fixed dollar co-pay was greater than the Prescription Drug Cost. [7] Plaintiffs' claims are typical of the claims alleged on behalf of all class members. The claims arise from similar events and are based on the same legal theory as other class members.

> 7 Computer records of UHC and its pharmaceutical benefits administrators may facilitate the calculation of co-pay overcharges in particular instances.

Although UHC accentuates the existence of thousands of different employer-sponsored health care benefits plans in 29 states, minor variations in the phrasing of the relevant plan language do not make the claims atypical with respect to the claims alleged in the Complaint. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174-75 (8th Cir. 1995) (typicality [*13] requirement satisfied even though class members held different mortgage instruments but sought same form of relief). The variations in plan language do not constitute an insurmountable obstacle to class certification. Indeed, the record indicates that there are three variations in the relevant "lesser of" co-payment clauses: "Prescription Drug Cost," "actual cost" and "cost." *See* Watson Aff., PP 3-4. The differences in plan terminology stressed by UHC are differences incidental to the shared legal theory and similar conduct upon which Plaintiffs' claims and the class certification motion are predicated. The typicality prerequisite is satisfied.

Fourth, Plaintiffs must show that the named representatives will fairly and adequately protect the interests of the class." *Fed. R. Civ. P. 23(a)(4)*. [HN8] To satisfy this requirement, Plaintiffs must demonstrate that (1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously, and (2) each representative's interests are sufficiently similar to those of the class such that it is unlikely that their goals and viewpoints will diverge. *Lockwood*, 162 F.R.D. at 576. The credentials [*14] of Plaintiffs' counsel indicate that they are fully competent and willing to pursue this action with zeal. *See* Foster Aff., PP 1-7. Plaintiffs' claims and interests are similar to members of the proposed class and there is no indication of conflicting goals. Plaintiffs are adequate class representatives.

### B. *Rule 23(b)*

[HN9] In addition to meeting the threshold criteria of *Rule 23(a)*, a party seeking class certification must satisfy one of the requirements of *Rule 23(b)*. A class may be certified under *Rule 23(b)(2)* if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Fed. R. Civ. P. 23(b)(2)*. Injunctive or declaratory relief is not "appropriate" when

the "final relief relates exclusively or predominantly to money damages." *Fed. R. Civ. P. 23(b)(2)*, Advisory Comm. Notes. Accordingly, Plaintiffs must demonstrate that their class action suit seeks predominantly injunctive relief rather than monetary damages.

The Eighth Circuit has cited with approval Wright & Miller's statement that [HN10] "if the *Rule 23(a)* [*15] prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)." *DeBoer, 64 F.3d at 1175*. A request for monetary relief is an insufficient basis for refusing to certify a class action under *Rule 23(b)(2). See id.; Bradford v. Agco Corp., 187 F.R.D. 600, 605 (W.D. Mo. 1999)* (holding that ERISA plaintiffs' request for monetary relief accompanying request for injunction did not preclude class certification under *Rule 23(b)(2)*). Other courts have certified ERISA classes pursuant to *Rule 23(b)(2)* where the plaintiffs alleged a course of conduct generally applicable to the class and sought monetary relief secondary to their request for declaratory and injunctive relief. *See Bublitz v. E.I. du Pont de Nemours & Co., 202 F.R.D. 251, 259 (S.D. Iowa 2001); Fuller v. Fruehauf Trailer Corp., 168 F.R.D. 588, 603 (E.D. Mich. 1996); Jansen v. Greyhound Corp., 692 F. Supp. 1022, 1028 (N.D. Iowa 1986)*.

In this case, Plaintiffs have alleged a course of conduct by UHC that was "generally applicable" to the proposed class. [*16] Plaintiffs seek both injunctive and declaratory relief with respect to the class members' rights under their plans. Plaintiffs' request for monetary relief incidental to the injunctive and declaratory relief does not preclude class certification. Thus, class certification under *Rule 23(b)(2)* is appropriate.

Plaintiffs also assert that they satisfy [HN11] *Rule 23(b)(3)*, which requires (1) "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and (2) "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Fed. R. Civ. P. 23(b)(3)*. In evaluating predominance and superiority, several factors are considered, including:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. [*17]

*Fed. R. Civ. P. 23(b)(3)*. The Court finds that common questions of law and fact predominate over any individualized questions in this case. The legal construction of the "lesser of" language in the plans is the focal point of the class members' claims. [HN12] When there is a common basis upon which to establish the fact of injury to each member, the existence of individualized questions of damage amounts does not preclude certification. *See Lockwood, 162 F.R.D. at 581-82*. Furthermore, the relatively small amounts at stake for each member render the class action a superior method for fair and efficient adjudication of this dispute.

If the Court later determines that class treatment becomes inappropriate, remedial measures, including the creation of subclasses or decertification, may be taken.

### IV. CONCLUSION

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

(1) Plaintiffs' Motion to Certify a Class [Doc. No. 21] is **GRANTED**. A class is certified as:

> All Members (subscribers, participants and beneficiaries) of ERISA-covered health plans controlled, underwritten or administered [*18] by [United HealthCare Insurance Company] or [United HealthCare Services, Inc.] or their subsidiaries, where the applicable plan language provided that the Member should pay the lesser of the "Prescription Drug Cost" (sometimes called the "cost" or "actual cost"), or the fixed dollar co-pay when purchasing prescription drugs at point of sale, but who in fact were charged an amount greater than the "Prescription Drug Cost" or the "actual cost" when the "Prescription Drug Cost" (or "actual cost")

was less than the fixed dollar co-pay.

(2) The parties shall contact Magistrate Judge Boylan regarding pre-trial scheduling.

BY THE COURT:

ANN D. MONTGOMERY

UNITED STATES DISTRICT JUDGE

Dated: February 5, 2002.