IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH L. PIKAS, on behalf of himself and all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE WILLIAMS COMPANIES, INC., et al.,<br><br>Defendants. | Case No. 08-CV-101-GKF-PJC |

## OPINION AND ORDER

This matter comes before the court on the Motion to Reconsider the Court's September 27, 2010 Opinion and Order (Dkt. #76) of defendant The Williams Companies, Inc. ("Williams") and plaintiffs' Motion to Clarify and Confirm the Class Definition (Dkt. #75).

### I. Facts

Plaintiff Joseph Pikas ("Pikas") filed this class action on behalf of himself and all others who took lump sum pension payments under the Williams Pension Plan ("Plan"). Pikas alleges the Plan illegally denied lump sum pension recipients the actuarial equivalent of a Cost of Living Adjustment ("COLA") which is awarded to pension annuity recipients under the Plan. Pikas alleges this disparity between benefits awarded to lump sum recipients and annuity recipients violates the anti-cutback provisions (29 U.S.C. § 1054(g)) and the nonforfeitability provisions (29 U.S.C. § 1053(a)(2)(A)) of ERISA. (*See* Complaint, Dkt. #2, p.6, ¶20-21).

Pikas, a former employee of Williams, received his pension as a lump sum payment in November, 2002. (Dkt. #2, p.2, ¶5). On October 28, 2003, Pikas initiated administrative review with

the Williams Pension Plan (the "Plan") seeking to receive a prospective COLA based upon actuarial predictions of the rising cost of living. (Dkt. #61-1, p.1). Pikas' request for a COLA was denied in January 2004, and his administrative appeal was denied on April 22, 2004. (Dkt. #65, p.14). Pikas filed this suit (originally filed in Ohio, then later transferred here) on November 14, 2006, a little over two years after he exhausted his administrative remedies. Pikas filed this suit roughly four years after receiving his lump sum payment. During that time, his administrative request for a COLA adjustment was pending or on appeal for about six months.

In June, 2008, the parties *stipulated* "that this case qualifies for class certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), and that the Court may grant certification of a class as defined in Plaintiffs' Class Action Complaint and Motion for Class Certification, provided, however that the following issues potentially affecting the class definition first be resolved: **1. Starting Date of the Class Period. . . . 2. Release Defenses. . . .**" (Dkt. #25, p.3-4). In light of that stipulation, the court granted plaintiffs' Motion for Class Certification. (Dkt. #36). On July 6, 2009, this court held that a three year statute of limitations for claims based upon a statutory violation applies to this case (Dkt. #45). This court later denied plaintiffs' motion to reconsider that holding. (Dkt. #74).

Following the court's ruling that a three year statute of limitations applies, Williams filed a Motion to Dismiss Pikas' individual claims as time-barred. In order to determine whether the claims are barred, the court had to determine when Pikas' claims accrued. In its Opinion & Order of September 27, 2010, this court ruled that Pikas' claim accrued for statute of limitations purposes when he exhausted his administrative remedies. Pikas' claims did not accrue until 2004, and thus his individual claim was timely filed. Pikas is the only member of the class to have pursued or exhausted his administrative remedies. The Opinion & Order did not address what effect the ruling

as to Pikas might have on other class members, because Williams sought only a determination as to the timeliness of Pikas' individual claim. Williams now asks the court to reconsider its conclusion that Pikas' claim did not accrue until his administrative remedies were exhausted.[1]

## II. Analysis

Under Fed. R. Civ. P. 54(b), "[e]very order short of a final decree is subject to reopening at the discretion of the district judge." *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983)).

### A.   Administrative Exhaustion

Williams first argues that, although claims for benefits due under the terms of a plan are subject to administrative exhaustion, statutory claims are not subject to the exhaustion requirement.[2] In its Opinion and Order, this court cited *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1205 (10th Cir. 1990) for the proposition that "[u]niformly, courts recognize that an ERISA cause of action accrues when an application for benefits is denied. Therefore, exhaustion of administrative (i.e., company- or plan-provided) remedies is an implicit prerequisite to seeking judicial relief." (citations omitted). Williams now contends *Held* drew a distinction between claims for benefits

---

[1] Although Williams advises the court that if the court does not reverse itself on the issue of accrual, "then individualized questions of plan participants' knowledge will predominate so as to make class treatment inappropriate," Williams has not sought to withdraw its previous stipulation "that this case qualifies for class certification . . . and that the Court may grant certification of a class . . .," nor does it pray in its motion to decertify the class.

[2] The court previously determined the plaintiffs' claims are not claims for benefits due under the plan, but are "best characterized as statutory claims under ERISA." (Dkt. #45, p1.).

3

under a plan which require administrative exhaustion, and claims for a statutory violation of ERISA which do not. Williams raises this argument for the first time in the Motion to Reconsider, and did not cite *Held* in its prior briefing.

In *Held*, the Tenth Circuit examined two claims, one for benefits due under the terms of the plan, and a second for a statutory violation of § 510 of ERISA[3]. The Tenth Circuit held administrative exhaustion was required for claims for benefits due under the terms of a plan. *Id.* at 1205-06. However, the claim for a statutory violation of § 510 of ERISA accrued when the plaintiff was constructively discharged, rather than when he exhausted his administrative remedies. *Id.* at 1205.

The Tenth Circuit noted "several circuits have distinguished between actions brought to enforce a statutory right under ERISA (for example, claims for injunctive relief arising under § 510) and actions brought to recover benefits under a plan, with respect to the question whether exhaustion of administrative remedies is required prior to seeking judicial relief." *Id.* at 1204. While the "Eleventh Circuit . . . and the Seventh Circuit . . . have held that beneficiaries of an ERISA plan must exhaust internal plan remedies before suing plan fiduciaries on the basis of alleged violations of duties imposed by the statute," there is no such requirement in the Ninth or Third Circuits. *Id.* at 1204-05. The Tenth Circuit "agree[s] with the Ninth and Third Circuits that a plaintiff need not exhaust administrative remedies prior to bringing an action under § 510 of ERISA." *Id.* at 1205.

The Tenth Circuit reasoned that requiring administrative exhaustion for a § 510 claim "would serve little purpose," and cited the reasoning of the Third Circuit that a § 510 claim asserts a

---

[3] § 510 of ERISA prohibits an employer from discharging an employee to interfere with his or her accrual of a benefit.

4

statutory right which plan administrators "have no expertise in interpreting. Accordingly, one of the primary justifications for an exhaustion requirement in other contexts, deference to administrative expertise, is simply absent." *Id.* at 1204-05 (quoting *Zipf v. A.T. & T.*, 799 F.2d 889, 893 (3rd Cir. 1986)). Although the Tenth Circuit limited its holding in *Held* to statutory violations of § 510, the logic applies equally well to the alleged ERISA violations in this case. After *Held*, district court cases from within the Tenth Circuit appear to be unanimous–none have held administrative exhaustion is a prerequisite for statutory violations of ERISA. *See Jensen v. Solvay Chems., Inc.*, 520 F. Supp. 2d 1356, 1359 (D. Wyo. 2007) (holding that four different "claims for enforcement of statutory rights . . . are not subject to exhaustion"); *Clark v. Humana Kansas City, Inc.*, 975 F. Supp. 1283, 1285 n. 3 (D. Kan. 1997) (holding § 510 claims are not subject to exhaustion); *Sigurdson v. Southmark-Nat'l Heritage, Inc.*, 1992 WL 331438, at *7 (D. Kan. 1992) (finding *Held* did not require administrative exhaustion "where the alleged violation of ERISA is statutory in nature"); *Baker v. Comprehensive Emp'yee Solutions*, 227 F.R.D. 354, 357 (D. Utah 2005) (declining to extend *Held* to all claims involving a statutory violation, but nonetheless finding exhaustion unnecessary for a statutory claim of breach of fiduciary duty).[4]

The court finds the logic of *Held* applies to Pikas' claims under the nonforfeitability and anti-cutback provisions of ERISA. Plan administrators do not have administrative expertise in interpreting these statutory provisions. The questions of whether the Williams Plan violates the nonforfeitability and/or anti-cutback provisions of ERISA are legal questions for the court. Interests of judicial economy would not be served by requiring administrative exhaustion because the dispute

---

[4]Pikas cites a number of cases for the proposition that ERISA actions require exhaustion of administrative remedies, but an examination of the cases reveals they all involve claims for benefits under a plan, and not claims for a statutory violation.

is one of law, not fact. After review of the new arguments and case law presented by the parties, the court follows the clear weight of authority in the Tenth Circuit and holds that administrative exhaustion is not required for the statutory violation claims in this case.

**B. Claim Accrual**

The court must now turn again to the question of when plaintiffs' claims accrued. The Tenth Circuit has not announced a general rule for when statutory claims accrue for the purposes of the statute of limitations. Under the facts of *Held*, the statute of limitations began to run when the plaintiff was constructively discharged in violation of § 510 of ERISA. 912 F.2d at 1205. Although the Tenth Circuit has not explicitly adopted a standard to govern when claims for statutory violations accrue under ERISA, the weight of case law from other jurisdictions applies the "clear repudiation" rule. Under the clear repudiation rule, a claim accrues "when there has been a repudiation by the fiduciary which is clear and made known to the beneficiary." *Abdel v. U.S. Bancorp*, 457 F.3d 877, 880 (8th Cir. 2006); *see also Miller v. Fortis Ben. Ins. Co.,* 475 F.3d 516, 520-21 (3rd Cir. 2007) (applying the clear repudiation rule); *Hakim v. Accenture U.S. Pension Plan*, 656 F. Supp. 2d 801, 819 (N.D. Ill. 2009) (holding claims accrue upon a "clear and unequivocal repudiation"). The clear repudiation rule is consistent with *Held*, where the claims accrued for statute of limitations purposes when the plaintiff was constructively discharged, an event which was certainly clear to the constructively discharged employee. 912 F.2d at 1205. *Held* also cited with approval the Second Circuit's application of the clear repudiation rule. *Id.* (citing *Miles v. N.Y. State Teamster's Conf., Etc.*, 698 F.2d 593, 598 (1983)).

Pikas argues administrative exhaustion is a prerequisite to claim accrual, but does not offer an alternative to the clear repudiation rule if administrative exhaustion is not required. In light of the Tenth Circuit's opinion in *Held*, and the significant body of case law outside the Tenth Circuit applying the clear repudiation rule to statutory violations of ERISA, the court will apply that rule in this case.

### C.    Application of the Clear Repudiation Rule

Williams argues the court should reconsider its alternative holding that there was nothing about the alleged underpayment in Pikas' lump sum that should have made the repudiation of Pikas' claim for a COLA "clear and made known to the beneficiary." (Dkt. #74, p.6). When the court previously ruled, it did not have the benefit of the significant body of case law the parties now raise on this issue. That case law includes two district court cases addressing facts very similar to those at issue here. In its prior Opinion and Order, the court relied on case law holding that an underpayment of benefits does not constitute a clear repudiation of a right to benefits due under the terms of the plan. *See, e.g., Cohen v. Local 338-RWDSU/UFCW*, 2010 WL 3199695 (S.D.N.Y. Aug. 12, 2010); *and Larsen v. NMU Pension Trust of NMU Pension & Welfare Plan*, 902 F.3d 1069, 1074 (2nd Cir. 1990). Because administrative exhaustion is typically required for a claim for benefits due under the plan, those cases logically hold that a clear repudiation occurs only after administrative exhaustion. Because this case involves claims for statutory violations of ERISA where exhaustion is not required, this court must reexamine the issue of what facts and circumstances lead to a clear repudiation of the plaintiffs' claims.

The weight of Circuit case law holds a cause of action accrues at the time when the facts, not

the law, establishing an ERISA violation become known to the beneficiary. *Meagher v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 856 F.2d 1418, 1423 (9th Cir. 1988) ("the statute of limitations is triggered by a claimant's knowledge of the transaction that constituted the alleged violation, not by his knowledge of the law"); *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1086 (7th Cir.1992) ("the relevant knowledge for triggering the statute of limitations is the knowledge of the facts . . . it is not necessary for a potential plaintiff to have knowledge of . . . its illegality");*Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003) (the statute of limitations is triggered upon "knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute").

The court has now been advised by the parties of a case which involved facts similar to those before this court: *Laurenzano v. Blue Cross and Blue Shield of Mass.*, 134 F. Supp. 2d 189 (D. Mass. 2001). In *Laurenzano*, the court held that each cause of action accrued, at the earliest, when the class members received a lump sum distribution which did not include a COLA. *Id.* at 209-10. The district court held that although it was not clear a participant *must* seek internal remedies prior to bringing suit, it was certainly clear that a participant "*may* seek internal remedies for statutory-based claims." *Id.* at 210 (emphasis in original). The court held causes of action for class members accrued upon receipt of their lump sum payments, except "for those class members who sought internal remedies, their causes of action did not accrue until they exhausted their internal remedies." *Id.* at 211.

A small number of district courts have held a claim cannot accrue under the clear repudiation standard until after the claimant has exhausted administrative remedies. *See Novella v. Westchester*

*Cnty.*, 443 F. Supp. 2d 540, 545-46 (S.D.N.Y. 2006) (finding mixed claims for statutory violations and benefits due under the plan accrued after the plan administrator affirmed the payments were correctly calculated). In *Williams v. Rohm and Haas Pension Plan*, 2009 WL 382628, 2009 U.S. Dist. LEXIS 10918 (S.D. Ind. 2009) ("*Rohm*"), the court addressed the issue of when a claim seeking a COLA for lump sum pension plan recipients accrued. *Rohm* is of limited persuasive value here because of the unique procedural posture of that case. In *Rohm,* the defendant previously persuaded the court to dismiss the named plaintiff without prejudice so as to require him to exhaust administrative remedies. Because the *Rohm* court relied on the defendant's arguments when it dismissed the case, it subsequently held that the defendant was estopped from subsequently arguing the cause of action accrued when the lump sum was distributed. That scenario is not presented here. Williams has not argued administrative exhaustion is a prerequisite to bringing a suit for a statutory violation.

With the benefit of the additional case law supplied in this round of briefing[5], it is now evident a claim is clearly repudiated and the statute of limitations is triggered upon "knowledge of the facts or transaction" that are the basis for the claim, rather than knowledge of its illegality. *Wright*, 349 F.3d at 330. The court concludes, as did the *Laurenzano* court, that class plaintiffs' claims accrued when they received their lump sum payments. 134 F. Supp. 2d at 211. The amount of the lump sum payment, and the fact it did not include a COLA, gave those plaintiffs "knowledge of the facts or transaction" that underlay their claims. Because those plaintiffs did not timely pursue administrative remedies, their alleged right to a COLA was clearly repudiated at receipt of the lump

---

[5]The court notes that the supplemental authority submitted in Dkt. #93, *Demoss v. Matrix Absence Management, Inc.*, 2011 U.S. App. LEXIS 17571 (10th Cir. 2011), involves a claim for benefits due under the terms of a plan, not a statutory violation claim, and is thus unpersuasive.

sum payment. Pikas, however, questioned whether he should have received a COLA and pursued his administrative remedies. Thus, Pikas did not have clear knowledge he would be denied a COLA until after he exhausted his administrative remedies. Because Pikas pursued his administrative remedies, Williams did not clearly repudiate Pikas' claim to a COLA until the administrative remedies were exhausted.

The terms of the Plan illustrate the reasonableness of this conclusion–the Summary Plan Description advises beneficiaries they "must properly file a claim for benefits and request a review of any complete or partial denial prior to seeking a review of your claim for benefits in a court of law." (AR0872, Dkt. #76-1, p.6). Pikas reasonably relied on this language in the Plan and pursued his administrative remedies. At the conclusion of the administrative process Williams sent a letter to Pikas' attorney stating: "Mr. Pikas has now exhausted his administrative remedies under the Plan and has a right to bring a civil action." (AR0010, Dkt. #65, p.14).

Williams now argues Pikas' claim was clearly repudiated when he received his lump sum payment and therefore the statute of limitations began to run at that time, but this is belied by their statement to Pikas that he could "now" bring a civil action after exhausting administrative remedies. Because Pikas relied on the Plan and pursued his administrative remedies, and because Williams then communicated that he had a right to bring a civil action, Williams is now estopped from claiming otherwise. The court concludes, as did the *Laurenzano* court, that a plaintiff who diligently pursued his or her administrative remedies should not be punished. 134 F. Supp. 2d at 211. Pikas timely pursued his administrative remedies as directed by the Plan, and should not now be penalized for doing so. Thus, with regard to Pikas, his claim was not clearly repudiated until after Williams denied his administrative claim on April 22, 2004. Because Pikas filed this suit on November 14,

2006, his claim was timely filed within the three year statute of limitations.[6]

Plaintiffs argue that under the clear repudiation rule, the Plan participants' claims do not accrue until they exhaust administrative remedies. The court has determined above, however, that administrative exhaustion is optional and not a prerequisite to pursuing claims for statutory violations of ERISA. The ruling plaintiffs seek would have the practical effect here of eliminating any statute of limitations for class members who have not yet pursued administrative remedies because a plaintiff could resuscitate his or her claim by seeking administrative remedies decades after the facts underlying the claim were known. Such a result would run counter to the strong judicial interest in promoting timely settlement of disputes. A rule under which a claim could not accrue until after administrative exhaustion,

> "defies common sense and the purpose of limitations protections. Plaintiffs' proposed rule would allow a prospective claimant to sleep on her rights for her entire career–as defendants argue plaintiff did here for over 20 years; so long as the prospective plaintiff never sought benefits so that her claims were never denied, the limitations period would never begin to run on her benefit claims."

*Scruggs v. ExxonMobil Pension Plan*, 2008 WL 2704614, *4 (W.D. Okla. 2008). The Tenth Circuit has stated: "[u]nder plaintiff's characterization, her claim would have an indefinite lifespan. Such a result would undermine the overriding purpose of a statute of limitation. Time limits are essential to promote justice by preventing surprises through the revival of claims that have been allowed to

---

[6]Although no other lump sum recipients have pursued administrative remedies to receive a COLA, the court's holding raises the obvious hypothetical question of what effect this ruling would have on a plaintiff who received a lump sum payment prior to the class start date, and in the future pursues his or her administrative remedies claiming a right to a COLA. The court makes no determination on the viability of such a hypothetical claim, nor does it determine whether laches or some other defense would bar such a claim. That issue is not before this court.

slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Lang v. Aetna Life Ins. Co.*, 196 F.3d 1102, 1105 (10th Cir. 1999). Therefore, the court rejects the proposition that, under the clear repudiation rule, plaintiffs' claims do not accrue until they exhaust administrative remedies.

### D. Plaintiffs' Motion to Clarify and Confirm the Class Definition

In light of the holding that Pikas' claim accrued after he exhausted administrative remedies, and all other potential class members claims accrued when they received their lump sum payments, it is unnecessary for the court to clarify, change, or amend the existing class definition. The class definition remains the one to which the parties previously stipulated:

> All vested participants in the Williams Pension Plan ("Williams Plan") and/or the predecessor Transco pension plans ("Transco Plan") who (a) retired or terminated from employment on or after November 15, 1991, (b) were entitled to receive pension benefits consisting, in whole or in part, of a pension benefit under the Transco Plan or a Grandfathered Pension, Early Grandfathered Pension, or Deferred Grandfathered Pension pursuant to Appendix XIX of the Williams Plan, and (c) elected to receive their pension benefits in the lump sum form of payment.

As the court stated in its July 6, 2009, Order, the starting date of the class period is November 15, 2003. Only those individuals whose claims accrued on or after that date are class members.

### III. Conclusion

Wherefore, Williams' Motion to Reconsider the Court's September 27, 2010 Opinion and Order (Dkt. #76) is granted in part and denied in part, and the plaintiffs' Motion to Clarify and Confirm the Class Definition (Dkt. #75) is denied.

IT IS SO ORDERED this 30th day of September, 2011.

*Gregory K. Frizzell*
Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma