# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

JOSEPH L. PIKAS, on behalf of himself )
and all other persons similarly situated, )
                                       Plaintiffs, )
                                              ) Case No. 8-cv-101-GKF-PJC
v. )

WILLIAMS COMPANIES, INC., and its )
Benefits Committee and Administrative )
Committee and Administrator of the Williams )
Pension Plan, and )
WILLIAMS PENSION PLAN, )
                                       Defendants. )

## OPINION AND ORDER

This matter comes before the court upon plaintiff class's Motion for Judgment on Liability [Dkt. #111] and defendant's Motion for Summary Judgment on Liability [Dkt. #113]. Both motions address whether defendants Williams Companies Inc. and Williams Pension Plan ("Williams") are liable to plaintiff class ("Class") under ERISA, 29 U.S.C. § 1002 *et seq.*, for providing cost of living adjustments ("COLAs") to annuitants but not for those who took a lump sum payment in lieu of their annuity. Because the COLAs are part of the accrued benefit, Williams must provide the actuarial equivalent to lump sum recipients. For the reasons set forth below, this court concludes Williams is liable to Pikas and the Class for failing to provide the actuarial equivalent of the normal retirement benefit.

**I.**    **Background**

Previously, the court certified a class and defined the starting date of the class period. [Dkt. #46 at 43-44]. The class includes all lump sum beneficiaries who took their distribution within the three years prior to the filing of the complaint. The court held that Oklahoma's three

year limitation for claims based on statutorily liability was the most analogous to the Class's ERISA-based claim, rejecting the Class's argument that Oklahoma's five year limitation for contract-based claims was more analogous. [*Id.*] The court denied the Class's motion to reconsider and held that the class representative's claim was timely. Mot. To Reconsider [Dkt. #54]; Order [Dkt. #74].

The parties each filed motions for judgment on liability, and agreed to the following undisputed facts:

- This class action is on behalf of retirees who took lump sum distributions under the Williams Pension Plan. The court certified that Class. [Dkt. #110 ¶1].
- The Class consists of vested participants in the Williams Plan whose lump-sum payments were made on or after November 15, 2003. [*Id.* ¶6].
- The Williams Pension Plan is governed by ERISA. [*Id.* ¶2].
- The Williams Pension Plan is the successor-in-interest to the Transco Plan. [*Id.* ¶1]
- The Transco Plan provided pension benefits in annuity form commencing at age 65. [*Id.* ¶8].
- The 24th Amendment to the Transco Plan offered an optional form of benefit in a lump sum distribution, effective November 15, 1991, but "excluded from the calculation of the lump sum's amount the Plan's provisions that provided a COLA." [*Id.* ¶¶8, 9].
- The Class claims "turn on a single fact–that the lump-sum distributions of their 'grandfathered' pension benefits did not take into account COLA increases which were applicable to the same pension benefits when distributed in the annuity form of payment." [*Id.* ¶3].
- The Class alleges the difference in treatment violates ERISA. [*Id.*]

## II. Discussion

### A. Standard of Review

The court reviews the plan administrator's decision as an appellate court "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire &*

*Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Williams Plan grants such authority to the Administrative Committee, ensuring deferential review. 2002 Plan, art. X, § 10.4(b) (AR 960) [Dkt. #119-6 at 152] ("All interpretations of this Plan, and questions concerning its administration and application, shall be determined by the Administrative Committee in its sole discretion and such determination shall be binding on at persons for all purposes."); *see also Owens v. Prudential Ins. Co. of Am.*, 06-CV-24-GKF-PJC, 2009 WL 279108 (N.D. Okla. Feb. 3, 2009) ("the court in this case has conducted its review of the record functioning as an appellate court rather than applying the summary judgment procedure").

However, here, the only issue to be decided is a legal one: whether ERISA requires the COLAs to be accounted for in the lump sum distribution. *See infra* § II.C. Thus, while the court still reviews the administrator's decision, that review is *de novo*. *See Penn v. Howe-Baker Eng'rs, Inc.*, 898 F.2d 1096, 1100 (5th Cir. 1990) ("we accord no deference to the Committee's conclusions as to the controlling law, which involve statutory interpretation").

### B. The Class Claims Arose Directly Under ERISA, Not Under The Terms Of the Plan

The Class, until recently, agreed that the Williams Plan denied COLAs to lump sum beneficiaries, and argued denying the COLAs to lump sum beneficiaries while providing them to annuitants statutorily violated ERISA. [*See, e.g.*, Dkt. #46 at 33:10-12 ("the plan language says that the computation of the lump sum amount, should you elect to receive one, is made without reference to the COLA benefits"); 34:5-8 ("You cannot have a plan that says we will pay you the normal retirement benefit unless you want it earlier, in which case you've got to give up some of it. That's what this plan says.")]. Recently, the Class shifted its argument to belatedly state that the Plan itself provided COLAs to lump sum beneficiaries. The court will not entertain that untimely argument for the following reasons.

Pikas pled the right to COLAs both "to recover benefits due [the Class] under the terms of the plan" and as "to redress violations of ERISA." [Dkt. #2 at 1; *see also id.* ¶¶ 10, 49]. At the administrative level, Pikas did not clearly raise the argument that the Plan itself required the COLA be provided to lump sum beneficiaries. Claim Letter [Dkt. #119 at 3] ("In computing the lump sum of the Transco amount, the Plan neglected to include the value of the Cost of Living Adjustment, which is part of his accrued benefit."); Appeal Letter [Dkt. #119 at 8] (same). Thus, Pikas may have failed to exhaust his administrative remedies on an "under the plan" claim.

The court first determined the nature of the Class's claim when defining the class period starting date. [Dkt. ##39, 40, 43, 45, 46]. The starting date depended on which Oklahoma statute of limitation was most analogous to the federal claim being pursued: a three year limitation for liabilities created by statute, 12 O.S. § 95(A)(2), or a five year limitation for breach of contract, 12 O.S. § 95(A)(1). The Class argued "ERISA is not the source of Plaintiffs' claims, but rather is the mechanism for the enforcement of those claims." [Dkt. #43 at 4]. Williams argued that "but for the overlay of ERISA you would not have a violation of the plan." [Dkt. #46 at 16:1-2]. At the July 6, 2009 hearing on the issue, Class counsel described the claim repeatedly as violating ERISA's requirements, not the Plan's terms:

- THEADO: "Simply put, Your Honor, that's what the plan offers, that normal retirement benefit. That is what we want the actuarial equivalent of when we get a lump sum benefit." [*Id.* at 29:5-7].

- THEADO: "I think we would agree, [Williams's counsel] and I, that **the plan language says that the computation of the lump sum amount, should you elect to receive one, is made without reference to the COLA benefits**, yes." COURT: "So in that sense [Williams's counsel] is right. You're not seeking to enforce the terms of the contract, you're seeking for a declaration or a determination of this Court that that term is violative of ERISA." [*Id.* at 33:9-16 (emphasis added)].

- THEADO: "Under the plan, the normal retirement benefit this plan pays is an annuity with a COLA. That is the normal retirement benefit, that's what we want. Now we want the actuarial equivalent of that because ERISA says that you are entitled to the actuarial equivalent if you take an optional form of benefit. If I may. I'm sorry, I

interrupted myself. You cannot have a plan that says we will pay you the normal retirement benefit unless you want it earlier, in which case you've got to give up some of it. **That's what this plan says.** That's it." [*Id.* at 33:24-34:8 (emphasis added)].

At the hearing, Class counsel cited no Plan provision providing COLAs to lump sum beneficiaries, rather arguing ERISA requires it do so if annuitants received a COLA.[1] Based on the briefs and oral arguments, the court held:

> …that plaintiffs' claims are best characterized as statutory claims under ERISA. Plaintiff's claims are based on ERISA's statutory provisions, and the essential nature of the claims are alleged statutory violations of ERISA. But for the ERISA provisions, the claims would not exist. Accordingly, this court concludes that Oklahoma's three-year statute for actions upon liability created by statute is the most analogous.

[Dkt. #45 at 1; *see also* Dkt. #46 at 43:16-24].

The Class then moved to amend the class certification and reconsider the statute of limitation decision by introducing a new argument that the ERISA "statutory requirements constitute terms of a pension plan implied by law" and relying heavily on *Hakim v. Accenture United States Pension Plan*, 656 F. Supp.2d 801 (N.D. Ill. 2009). [Dkt. #54 at 4, 9]. The court denied reconsideration because the new arguments did not address Oklahoma's statutes of limitation, from which the court had to choose the most closely analogous. [Dkt. #74 at 2 ("There was no mention of an Illinois counterpart to Oklahoma's statute of limitations for actions brought for liabilities created under statute.")]. At that point in the litigation, the Class did not

---

[1] Williams's counsel repeatedly stated that the Plan specifically excluded COLAs from lump sum payments. [Dkt. #46 at 14:5-6 ("[The Plan] says it will be calculated without regard to Section 212 which is the COLA section"), 14:10-11 ("The plan specifically said without the COLA calculation."), 17:6-9 ("…they cannot point to anywhere in the plan where it says the COLAs will be calculated. As a matter of fact, it expressly says otherwise."). Pikas's counsel did not contest these assertions. The parties had not provided the full administrative record to the court at that time. [*See* Dkt. #119]. The Class now asserts the operative Plan does not explicitly exclude a COLA for lump sum beneficiaries. *See, e.g.*, Transco Energy Plan (28th Amendment) § 14.6 (AR 247-248) [Dkt. #119-1 at 75-76].

- 5 -

have a theory under which they could recover under the Plan terms and their arguments to the contrary were predicated on securing a longer statute of limitations.

On September 7, 2011 – two years after the July 6, 2009 hearing – the Class first asserted in an unrelated reply brief that "***Defendants' Plan does not exclude the COLA***." [Dkt. #95 at 5, 6]. The Class now argues the 1991 Plan expressly excluded a COLA, but all subsequent Plan restatements are silent about a COLA. *Id.* at 5-6. The Class believes that a change from exclusion to silence requires a COLA be included, and thus their claims are contractual in nature. To their credit, plaintiffs acknowledge that this new theory was not presented in previous briefing or at the July 6, 2009 hearing. *Id.* at 7 (stating "Plaintiffs' counsel recognize that they were not previously as particular in referring to the Plan's provisions…. leading the Court to conclude that 'the essential nature of plaintiff's claims are statutory violations of ERISA'" and describing plaintiffs' counsel's previous argument as "mistaken").

The court required both parties to file motions for judgment on liability issues. [Dkt. #102; Dkt. #105 at 17:12-18]. The Class's Motion for Judgment [Dkt. ##111, 112] included the first detailed argument that the operative Plan required COLA payments to lump sum beneficiaries. [Dkt. #112 at 4-9]. More than five years after filing suit and three years after the court held the Class's claims were not for benefits under the Plan's terms, the Class fundamentally changed their argument to contend that the Plan itself promised lump sum beneficiaries a COLA. If the Class had raised this argument earlier in the litigation, the applicable statute of limitations and class certification decisions could possibly have been decided differently. A hearing scheduled to cover liability issues was then "sidetracked" by the Class's new argument. [Dkt. #120 at 7:7-10].

After permitting the parties to discuss whether to revisit the court's past decision, the court decided:

> This court simply cannot permit this new argument made nearly six years into this litigation and four years before this particular federal court. Though the specifics were raised in a reply brief last September on an unrelated issue relative to the filing of supplemental authority on a different issue, it was not raised before this court until recently and the court ordered briefing on the issue of liability, and it was not raised before the committee. It seems to the court that if the court were to allow it, the court might well be required to dismiss the case and remand to the committee to consider the new argument. So, with due respect, this court is not going to consider it.

[Dkt. #120 at 58]. To revisit the statute of limitations and class certification decisions would add costs to all parties, waste judicial resources and unfairly change the nature of this six-year-old litigation to the prejudice of defendants. *See Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir. 1991) ("We do not believe, however, that the liberalized pleading rules permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case. This practice, if permitted, would waste the parties' resources, as well as judicial resources, on discovery aimed at ultimately unavailing legal theories and would unfairly surprise defendants, requiring the court to grant further time for discovery or continuances."). Finally, addressing again whether the Plan itself guarantees COLAs to lump sum beneficiaries would require remanding the case to the Administrative Committee who has discretion to interpret the Plan's provisions. *See* 2002 Plan, art. X, § 10.4(b) (AR 960) [Dkt. #119-6 at 152]. Such remand would further delay resolution in this six-year-old case, again prejudicing defendants.

### C. ERISA Requires Williams to Provide Lump Sum Recipients the Actuarial Equivalent of the COLAs Provided to Annuitants

Any lump sum plan must be actuarially equivalent to the accrued benefit, which includes the COLA here. *See Williams v. Rohm and Haas Pension Plan*, 497 F.3d 710, 714 (7th Cir.

2007) ("If a defined benefit pension plan entitles an annuitant to a COLA, it must also provide the COLA's actuarial equivalent to a participant who chooses instead to receive his pension in the form of a one-time lump sum distribution."), *cert denied* 552 U.S. 1276 (2008); *Laurenzano v. Blue Cross and Blue Shield of Mass., Inc. Ret. Income Trust*, 134 F. Supp. 2d 189 (D. Mass. 2001).

       1) <u>Accrued Benefit</u>

Whether the COLA is part of the accrued benefit is dispositive in this case. Under ERISA, an accrued benefit in a defined benefit plan is defined as "the individual's accrued benefit determined under the plan and, except as provided in section 1054(c)(3) of this title, *expressed in the form of an annual benefit commencing at normal retirement age*." 29 U.S.C. § 1002(23) (emphasis added). While courts look to the terms of the plan to determine the scope of the accrued benefit, the statutory definition of an "accrued benefit" cannot be changed by the contracting parties to a pension agreement. *Rohm*, 497 F.3d at 713; *Hickey v. Chicago Truck Drivers*, 980 F.2d 465, 468 (7th Cir. 1992); *Laurenzano*, 134 F. Supp. 2d at 200.

Here, any annuitant at normal retirement age will receive a set payment that will increase according to a COLA throughout the annuitant's lifetime. That is the accrued benefit. *See Rohm*, 497 F.3d at 713 ("What would [plaintiff] get if he chose to receive his pension in annuity payments? The annuity, calculated based upon his years of service and compensation, plus the yearly COLA. That is the accrued benefit."). "ERISA protects the benefits described in the Plan by ensuring that, if a pensioner is promised a benefit and fulfills the conditions required to receive it, the pensioner will actually receive the described and promised benefit." *Hickey*, 980 F.2d at 468. Williams argues that the condition required to receive the COLA was choosing the annuity rather than the lump sum payment. [Dkt. #113 at 6]. That is incorrect. The condition is years of service required to vest, *not* choosing the appropriate form of benefit. Once a retiree's

pension vests, he has accrued the promised COLA.  Williams may not require him to forgo that COLA to take an optional form of payment.  *See* 29 U.S.C. § 1054(c)(3) (requiring optional forms be actuarially equivalent to the accrued benefit).

The COLA is not an ancillary benefit.  ERISA differentiates between protected accrued benefits and unprotected ancillary benefits.  26 C.F.R. § 1.411(d)–3(g)(2) & 1.411(d)–3(b)(3).  Neither party suggests the COLA is an ancillary benefit.  Because the COLA provides additional retirement income necessary to maintain the real value of retirement benefits, the "participant's entitlement to his or her normal retirement benefit include[s], as one component, the right to have the benefits adjusted pursuant to the COLA provision."  *Hickey*, 980 F.2d at 468-69.  The COLA is not an ancillary benefit.

The COLA also is not a retirement-type subsidy.  ERISA affords some protection to certain benefits that are not accrued benefits, including early retirement benefits and retirement-type subsidies, by treating them as accrued benefits for anti-cutback purposes.  26 U.S.C. § 411(d)(6)(B).  If the COLA were a retirement-type subsidy, it would not be a protected accrued benefit but it would be safe from plan amendments cutting back the benefit.  Because the Williams Plan lump sum option does not provide a COLA, the COLA could not be cutback by a plan amendment.  *See infra* § II.C.4).  Thus, if the COLA were a retirement-type subsidy, Williams would not be required to provide it to lump sum recipients.

Retirement-type subsidies are defined in conjunction with retirement-type benefits:

**(iii) Retirement-type benefit.** The term retirement-type benefit means--

(A) The payment of a distribution alternative with respect to an accrued benefit; or

(B) The payment of any other benefit under a defined benefit plan (including a QSUPP as defined in § 1.401(a)(4)–12) that is permitted to be in a qualified pension plan, continues after retirement, and is not an ancillary benefit.

> **(iv) Retirement-type subsidy.** The term retirement-type subsidy means the excess, if any, of the actuarial present value of a retirement-type benefit over the actuarial present value of the accrued benefit commencing at normal retirement age or at actual commencement date, if later, with both such actuarial present values determined as of the date the retirement-type benefit commences. Examples of retirement-type subsidies include a subsidized early retirement benefit and a subsidized qualified joint and survivor annuity.

26 C.F.R. § 1.411(d)–3(g)(6). A retirement benefit is a retirement-type subsidy "if the sum of monthly payments for the participant's life exceeds what the participant would have received as normal retirement benefits." *Richardson v. Pension Plan of Bethlehem Steel Corp. & Subsidiary Cos.*, 67 F.3d 1462, 1468 (9th Cir. 1995), *opinion withdrawn by* 91 F.3d 1312 (9th Cir. 1996), *and different results reached in Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982 (9th Cir. 1997). For example, plant shutdown benefits – payable if the beneficiary's plant closes – are retirement-type subsidies if they continue beyond normal retirement age and exceed the amount payable under an actuarially reduced normal retirement benefit. *See Bellas v. CBS, Inc.*, 221 F.3d 517, 532 (3d Cir. 2000) ("[U]npredictable contingent event benefits that provide a benefit greater than the actuarially reduced normal retirement benefit are retirement-type subsidies, and therefore are accrued benefits under section 204(g), if the benefit continues beyond normal retirement age"); *Richardson*, 67 F.3d at 1468-69 (holding shutdown benefits were retirement-type subsidies where they continued past normal retirement age and "exceed[] what the Bethlehem employees would have received as normal retirement benefits"); *see also Kerber v. Qwest Pension Plan*, 572 F.3d 1135, 1147 (10th Cir. 2009) (holding "'subsidy' was intended to refer to benefits that continue over a period of time following retirement").

Williams incorrectly characterizes the COLA as a retirement-type subsidy. The COLA is not a supplemental benefit to some retirees based on contingent circumstances that may occur before normal retirement age, but continue after normal retirement age. The COLA affects all annuitants based on contingent circumstances and only occurs after normal retirement age. The

contingent nature of the COLA amount is not enough to transform this accrued benefit into a retirement-type subsidy. Additionally, the COLA commences at normal retirement age even though it does not change the annuity amount until the year after retirement.

While ERISA permits each plan to select the benefit amount provided, "it remains a paternalistic regulation designed to restrict the freedom of contract," including the definition of accrued benefits. *Rohm*, 497 F.3d at 714. Like the two courts that previously addressed this question, this court holds that a COLA given to annuity recipients is part of the accrued benefit under ERISA. *See id.* at 713; *Laurenzano,* 134 F. Supp. 2d at 201.

### 2) Actuarial Equivalence Rule

Because the COLA is part of the statutorily-defined accrued benefit – and not a retirement-type subsidy – ERISA requires the COLA be accounted for in the lump sum payment. ERISA's actuarial equivalence provision mandates that for any benefit taken other than in a single life annuity, the accrued benefit must be actuarially equivalent:

> For purposes of this section, in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age, or if the accrued benefit derived from contributions made by an employee is to be determined with respect to a benefit other than an annual benefit in the form of a single life annuity (without ancillary benefits) commencing at normal retirement age, the employee's accrued benefit, or the accrued benefits derived from contributions made by an employee, as the case may be, shall be the actuarial equivalent of such benefit or amount determined under paragraph (1) or (2).

29 U.S.C. § 1054(c)(3).

### 3) Anti-Forfeiture Rule

The anti-forfeiture rule provides that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." 29 U.S.C. § 1053(a). ERISA's non-forfeiture requirement ensures that an employee's own contributions are "immediately nonforfeitable" and an employer's contributions

are "nonforfeitable after a minimum vesting period." *Foster v. PPG Indus., Inc.*, 2012 WL 3834722, at *5 (10th Cir. Sept. 5, 2012). Forfeiture generally occurs when an employee loses benefits based on "some prohibited action on the part of the employee." *Id.* Pikas alleges nothing of the sort. The plan, as written, did not provide a COLA for lump sum recipients, and thus it could not be forfeited. The anti-forfeiture rule does not apply here.

        4) <u>Anti-Cutback Rule</u>

The anti-cutback rule provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." 29 U.S.C. § 1054(g). The anti-cutback rule is inapplicable in the absence of a plan amendment. Here, the plan did not include a COLA for lump sum recipients, but did include a COLA for annuitants. No plan amendment cutback a previously granted COLA. The anti-cutback rule is inapplicable here.

        **D. The Appropriate Remedy Will Be Addressed Separately**

The Class raises whether the equitable remedy of surcharge should be available. [Dkt. #111 at 3]. The court will not entertain this argument now. The court repeatedly cabined the current proceedings to liability questions only. [*See* Dkt. #105 at 17:14-18 (MS. POE: "Your Honor, would you be wanting then at that point summary judgment motions on both liability and damages, or just the liability?" THE COURT: "Just liability." MR. PERRIN: "Just Liability.")]; [Dkt. #120 at 60:5-10 ("I think back in February we all agreed that we would segregate remedy. I think the briefing on liability kind of inched over into remedy somewhat and I'm not interested in going there. I think that's an issue after liability.")]. The parties will be given an opportunity to brief remedy issues fully.

To that end, the following briefing deadlines are established to address the proper remedy in light of this court's liability determination. The Class will submit a motion on the proper

remedy by November 13, 2012. Williams will respond by November 27, 2012. And Pikas may reply by December 4, 2012.

### III.     Conclusion

Because COLAs are part of the accrued benefit that commences at normal retirement age, ERISA requires any lump sum payment to be actuarially equivalent. The Williams Plan did not provide the actuarial equivalent, and is liable to Pikas and the Class. The anti-forfeiture and anti-cutback provisions do not apply because the Class did not timely argue that the terms of the Plan itself required a COLA to be paid to lump sum beneficiaries. Remedies need be established in a separate proceeding, as discussed above.

WHEREFORE, the Class's Motion for Judgment on Liability [Dkt. #111] is granted, and Williams's Motion for Summary Judgment on Liability [Dkt. #113] is denied. The parties are directed to consult for the purposes of determining how much time will be necessary, if any, for a hearing on remedies, and to determine at least two alternative dates on which counsel will be available for such a hearing. Counsel shall then inform the Court's deputy clerk of the alternative dates in order that the hearing may be set.

DATED this 19th day of October, 2012.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT